Peelle, J.,
delivered the opinion of the court:
The claimant, a lieutenant-commander in the United States Navy, seeks to recover the pay of a fleet engineer, South Atlantic Station, from April 19, 1899, to April 15, 1901, at the rate of $4,400 per annum, loss the amount received by him from the United States during that period.
As the findings disclose, the claimant was, on April 15, 1899, designated as engineer of the fleet by Rear-Admiral Howison, commander in chief South Atlantic Station, whose flagship was the U. S. S. Chicago, which designation was approved by the Secretary of the Navy April 19, 1899.
Thereafter, October 2,1899, Rear-Admiral Howison hauled down his flag as commander in chief of said station, and on *391 November 18 thereafter he was succeeded in command by Rear-Admiral Schley, who also designated the claimant as engineer of the fleet, which designation Avas approved by the Secretary of the Navy November 27, 1899.
From October 2,1899, when Rear-Admiral Howison hauled down his flag as commander in chief, until November 27, 1899, a period of fifty-four days, the flagship U. S. S. Chicago was separated from the squadron or fleet, and no duties as engineer of the fleet were required of the claimant during that period.
No order of any kind was issued detaching the claimant from duty as engineer of the fleet until April 15, 1901, when by order of the Secretary of the Navy the claimant was detached from duty as engineer of the fleet.
Revised Statutes, 1393, provides that “ the President may designate from among the chief engineers in the service and appoint to every fleet or squadron an engineer who shall be denominated engineer of the fleet.”
That provision of the statute is satisfied when the Secretary of the Navy, acting, as he does in such matters, for the President, approves the designation of officers selected by a commander in chief to act as his general staff.
Revised Statutes, section 1556, making provision for the annual pay of commissioned officers and warrant and petty officers and others in the Navy, among other things provides: “Fleet surgeon, fleet paymaster, and fleet engineer, four thousand four hundred dollars. ”
Thus the law stood prior to the act of March 3, 1899 (30 Stat. L., 1004), known as the Navy personnel act, and but for that act no question would be raised as to the claimant’s right to pay as fleet engineer, except for the interim when Rear-Admiral Howison hauled down his flag as commander in chief, and Rear-Admiral Schley, fiftj7-four days thereafter, succeeded him.
The assistant comptroller decided against the right of the claimant to pay as fleet engineer subsequent to March 3, 1899, on the ground, in effect, that under section 1393 fleet engineers could only be appointed from among the chief engineers, and that as the corps of engineers had, by the operation of the act of 1899, been abolished, the provision of *392 section 1556-, in respect to the pay of $4,400 per annum for fleet engineers, had become inoperative. As to fleet paymaster and fleet surgeons, however, who are authorized to be designated and appointed under Revised Statutes, section 1382, the Comptroller holds that as they belong to grades still in existence the same rule does not apply; and that as to them, they are entitled to be paid $4,400 per annum, notwithstanding the provisions of the act of March 3, 1899.
The first question arising is, Was the Corps of Engineers abolished by the act of 1899 ?
Section 1 of that act provides “that the officers constituting the Engineer Corps of the Navy be, and are hereby, transferred to the lino of the Navy, and shall be commissioned accordingly.”
Subsequent sections provide the manner in which such officers shall take rank in the line of the Navy, the duties they shall perform; and section 7 provides what officers shall constitute “the active list of the line of the Navy.”
As the officers who constituted the Engineer Corps under Revised Statutes, section 1390, had been transferred to the line of the Navy, it follows that the corps, as thus constituted, was abolished. But it will be observed that while such officers are transferred to the line of the Navy, the duties of engineers are not abolished. There will continue to be engineers and chief engineers of the Navy, though under another name.
Those below the rank of commander, as stated in section 4, may still be required to perform the duties of engineer at sea or on shore. Such duties will be continued, as we construe the act, until, as provided in section 5, those officers “transferred to the line to perform engineer duty only, who rank as, or above, commander, or should subsequently attain such rank, shall perform shore duty only.”
At the time of the passage of the act of 1899 the claimant was a chief engineer in the Navy, having been appointed to that grade January 26, 1895, so that by the operation of the act of 1899 the claimant was transferred to the line of the Navy and commissioned as lieutenant-commander. And as a lieutenant-commander he was designated by different commanders in chief of the South Atlantic station, to serve as *393 fleet engineer, both of which designations were approved bv the Secretary of the Navy.
The President, acting through the Secretary of the Navjq determined, by his approval of the designations so made of the claimant as fleet engineer, that such duties were neces-saiy to be performed for the preservation and efficiency of the machinery connected with the motive power of the several ships constituting the fleet, as well as for the safety and welfare of the officers and men on board.
There is no express language in the act of 1899 repealing-section 1393, authorizing the President to “designate from among the chief engineers, and appoint an engineer who shall be denominated as engineer of the fleet.”
Repeals by implication are not favored, ana if section 1393 can stand in harmony with the legislation on the subject it should bo given effect.
We fail to see anything in the act of 1899 expressive of the purpose of the Congress to do away with fleet engineers while retaining fleet surgeons and fleet paymasters. On the contrary, the purpose of the act was to reorganize and increase the efficiency of the personnel of the Navy, and not to limit the power of the President, as it then existed, to designate fleet officers.
Section 1393 is rather permissive of a power that existed in the President to designate fleet engineers, when in his judgment they become necessary, though said section carries with it the right to the additional compensation provided for by section 1556.
I>3T the action of the Secretary in approving the designation of claimant as fleet engineer he thereby in effect construed section 1393 as still in force, unaffected by the act of 1899; and we are not prepared to go behind his action or to hold that he was wrong. On the contrary, we think the question at most is one of doubt, and where doubt exists “the construction given to a statute by those charged with the duty of executing it is always entitled to the most respectful consideration and ought not to be overruled without cogent reasons. ” (Edwards v. Darby, 12 Wheat., 210; United States v. Moore, 95 U. S., 760, 763.)
Hence we reach the conclusion that while the Corps of Engi *394 neers is abolished and the officers constituting that corps are merged in the line of the Nav3r and commissioned accordingly, it is a change of name and not of duties; for, bjr the express language of section 4, the engineer officers transferred to the line are to perform such sea or shore dutjr “as is performed by engineers in the Navy,” thus recognizing the necessity for the continued duties of engineers, though under a different official title.
In other words, prior to the act of 1899 the President designated from among the' chief engineers an engineer to perform the duties of fleet engineer, while since that act he designates from among the lieutenant-commanders, as provided bj^ navy regulation 367, of 1900, an engineer to perform the same duties and, too, one who prior to the act of 1899 was a chief engineer.
The necessity for the appointment of a fleet engineer must be left to the discretion of the President, and when he acts the presumption is that he has performed his duty according to law.
The claimant having been designated, with the approval of the Secretary, as fleet engineer, and having performed the duites pertaining thereto, is entitled to the salary provided therefor in section 1556, unless taken away by the act of 1899.
Section 13 of that act fixes the salary of commissioned officers of the line of the Navy the same as provided by law “for the officers of corresponding rank in the Army,” and the last proviso but one to that section provides that “no provision of this act shall operate to reduce the present pay of commissioned officers now in the Navy, and in anjr case in which the pay of such an officer would otherwise bo reduced he shall continue to receive pay according to existing law.”
Whether the language of that proviso is broad enough to include the claimant as fleet engineer, for which he was designated and appointed after the passage of the act, is questionable, but the amendatory act of June 7, 1900 (31 Stat L., 697), provides that “section 13 of the act approved March 3, 1899, entitled ‘An act to reorganize and increase the efficiency of the personnel of the Navy and Marine Corps of the U nited States,’ is hereby so amended as to provide that nothing therein contained shall operate to reduce the pay which, but *395 for the passage of such act, would have been received by any commissioned officer at the time of its passage or thereafer.”
The first proviso quoted applies to the pay which was being received by commissioned officers in the Navy at the time the act was passed, and does not in terms apply to the pay thereafter, and for that reason is not perhaps broad enough to include the claimant’s pajr as fleet engineer, to which he was thereafter designated and appointed.
But as the amendatory act provides “that nothing therein contained (act 1899) shall operate to reduce the pay which, but for the passage of said act, would have been received by ” the claimant as fleet engineer, it follows that the language is broad enough not only to include the pay received by commissioned officers at the time of the passage of the act, but their pay thereafter; and the claimant is therefore entitled while thus serving as fleet engineer to the pay provided therefor b3r section 1556.
But though no order was issued detaching the claimant from duty as fleet engineer at the time Rear-Admiral Howison hauled down his flag as commander in chief, the flagship U. S. S. Chicago, upon which the claimant was serving, was, as set forth in finding n, separated from the rest of the fleet, and no duties were required of the claimant as fleet engineer thereafter until he was designated by Rear-Admiral Schley, with the approval of the Secretary, as set forth in that finding.
This,, we think, is sufficient to deprive the claimant of the pajr as fleet engineer during the period or interim of fifty-four days, even if the detachment of the commander in chief was not of itself a revocation of his appointment as fleet engineer.
This latter would seem to be the view taken by the Secretary, since he again approved the designation of the claimant as fleet engineer when Rear-Admiral Schley succeeded to the command.
For the reasons we have given, the claimant is entitled to recover the difference between Si,100 per annum as fleet engineer and the sum he has received from April 19, 1899, the date of his first designation and appointment by the President, through the Secretary, until April 15,1901, when he was detached from duty, excluding from the computation the *396 period of fifty-four days between the date when Rear-Admiral Howison hauled down his flag and the President again, through the Secretary, approved the designation so made by P ar-Admiral Schley.
udgment herein is entered in the sum of $1,797.50.